UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 DEC 28  PM 12: 47

CLERK

BY_____
DEPUTY CLERK

MICHAEL S. PIECIAK, *in his official* )
*capacity as Commissioner of the* )
*Vermont Department of Financial* )
*Regulation, as Liquidator of Global* )
*Hawk Insurance Company Risk* )
*Retention Group,* )
 )
       Plaintiff, )
 )
v. )      Case No. 2:20-cv-00173
 )
JASBIR S. THANDI, GLOBAL )
CENTURY INSURANCE BROKERS, )
INC., JASPREET SINGH PADDA, and )
QUANTBRIDGE CAPITAL LLC, )
 )
       Defendants. )

**OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO
COMPEL DISCOVERY FROM DEFENDANT JASBIR S. THANDI**
(Doc. 47)

On July 9, 2021, Plaintiff moved to compel Defendant Jasbir S. Thandi to produce certain documents requested in Plaintiff's First Set of Document Requests and respond to interrogatories twelve and thirteen of Plaintiff's First Set of Interrogatories. Mr. Thandi opposed the motion on July 30, 2021. On August 20, 2021, Plaintiff filed his reply and the court took the motion under advisement.

Plaintiff is represented by Eric A. Smith, Esq. and Jennifer Rood, Esq. Mr. Thandi is represented by Brian A. Suslak, Esq., Michael J. Racette, Esq., and Tory A. Weigand, Esq.

**I.    Factual and Procedural Background.[1]**

Global Hawk Insurance Company Risk Retention Group ("Global Hawk") is a

---

[1] The underlying facts are taken from the Complaint.

Vermont-domiciled insurance company and risk retention group. Mr. Thandi, a licensed property casualty broker agent and surplus lines broker in California, is the President and Treasurer, and a director, of Global Hawk. On June 8, 2020, in Vermont Superior Court, Global Hawk was declared insolvent, placed in liquidation, and Michael S. Pieciak, in his official capacity as Commissioner of the Vermont Department of Financial Regulation, was named its liquidator. Plaintiff brings this action against Mr. Thandi, Global Century Insurance Brokers, Inc. ("GCIB"), Jaspreet Singh Padda, and QuantBridge Capital LLC ("QuantBridge") (collectively, "Defendants").

GCIB is a California corporation which managed the business of Global Hawk pursuant to an agreement. Mr. Thandi is and at all relevant times was the President and sole owner of GCIB. Global Hawk also retained a captive manager in Vermont, Global Insurance Management & Consulting LLC ("Global Insurance"), which maintained Global Hawk's books and records. QuantBridge is a New York limited liability company and investment advisor which managed assets for Global Hawk pursuant to an agreement. Mr. Padda is and at all relevant times was the managing member and chief compliance officer of QuantBridge.

Plaintiff alleges that Defendants engaged in a scheme to defraud through misappropriation of Global Hawk's assets and misrepresentation of its financial condition that concealed its insolvency from the Vermont Department of Financial Regulation and harmed policyholders and claimants. Among other things, the Complaint alleges that Mr. Thandi, as an officer of Global Hawk, knowingly signed false financial statements that hid Global Hawk's insolvency and overstated its assets; that GCIB and Mr. Thandi maintained financial records that overstated Global Hawk's assets; and that QuantBridge and Mr. Padda provided GCIB with false investment statements that overstated Global Hawk's assets.

The scheme to defraud allegedly involved two Global Hawk investment accounts at Stifel Nicolaus & Company ("Stifel"). Mr. Thandi had signatory authority on both Stifel accounts, and Mr. Padda had signatory authority on one. Rather than provide Global Insurance with account statements from Stifel, GCIB provided monthly account

statements from QuantBridge that claimed to report amounts held in the Stifel accounts but falsely reported receipt of funds or omitted withdrawals of funds in the Stifel accounts. Global Hawk's annual financial statements were prepared using QuantBridge's false statements rather than Stifel's reports to GCIB. In addition, Mr. Thandi and GCIB allegedly falsely documented capital contributions to Global Hawk by providing Global Insurance with false bank statements and deposit receipts signed by Mr. Thandi.

Plaintiff's Complaint asserts ten claims: a violation of 18 U.S.C. § 1962(c), a section of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), by all Defendants ("Claim I"); breach of fiduciary duty by Mr. Thandi and GCIB ("Claim II"); breach of fiduciary duty by Mr. Padda and QuantBridge ("Claim III"); aiding and abetting breach of fiduciary duty by Mr. Padda and QuantBridge ("Claim IV"); conversion by Mr. Thandi and GCIB ("Claim V"); aiding and abetting conversion by Mr. Padda and QuantBridge ("Claim VI"); fraud by all Defendants ("Claim VII"); breach of contract by GCIB ("Claim VIII"); and breach of contract by QuantBridge ("Claim IX"). Plaintiff also seeks an accounting by GCIB ("Claim X").

The clerk entered default against GCIB on February 26, 2021 (Doc. 21) and against QuantBridge on November 22, 2021 (Doc. 82).

On April 21, 2021, Plaintiff served Mr. Thandi with its First Set of Document Requests and First Set of Interrogatories. On June 4, 2021, Mr. Thandi asserted a Fifth Amendment privilege as to each document request and objected to each interrogatory on Fifth Amendment grounds. Mr. Thandi also objected to document requests six through seventeen as overly broad.

Plaintiff's First Set of Document Requests sought from Mr. Thandi "all responsive documents in your possession, custody or control, **including documents in the possession, custody or control of GCIB**." (Doc. 47-3 at 4) (emphasis in original). On May 17, 2021, Mr. Thandi filed his initial disclosures, which represented: "Because of the Global Hawk Liquidation proceeding and the fact that GCIB ceased doing business in 2020, [Mr. Thandi] currently does not have access to the records of either company. [Mr.

3

Thandi] is currently reviewing his potential options for attempting to gain access to GCIB's Records." (Doc. 47-2 at 4.)

The parties conferred in good faith but were unable to resolve this discovery dispute. On July 9, 2021, Plaintiff filed the pending motion to compel, which Mr. Thandi opposed on July 30, 2021. Plaintiff replied on August 20, 2021.

## II.    Conclusions of Law and Analysis.

Plaintiff argues Mr. Thandi should be compelled to produce all responsive GCIB documents because a corporation has no Fifth Amendment privilege. Plaintiff also seeks to compel production of certain documents whose existence is a foregone conclusion and therefore are not privileged under the Fifth Amendment. In addition, Plaintiff seeks to compel Mr. Thandi to respond to interrogatories twelve and thirteen of Plaintiff's First Set of Interrogatories because it is not apparent how a response would be incriminatory. In response, Mr. Thandi contends Plaintiff's document requests and interrogatories ask him "to potentially incriminate himself by, for instance, admitting that he possess[es] certain documents, identifying and producing those documents, all in aid[] of the Plaintiff's effort to prove its claims—at least one of which in and of itself carries criminal penalties." (Doc. 55 at 8.)

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. 5. It "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Baxter v. Palmigiano*, 425 U.S. 308, 316 (1976) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)).

"To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." *Hiibel v. Sixth Jud. Dist. Court of Nev., Humboldt Cnty.*, 542 U.S. 177, 189 (2004). "[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Doe v. United States*, 487 U.S. 201, 210 (1988). A communication is

4

incriminatory if it is "directly incriminatory" or "'would furnish a link in the chain of evidence needed to prosecute the claimant[.]'" *United States v. Greenfield*, 831 F.3d 106, 114 (2d Cir. 2016) (quoting *Ohio v. Reiner*, 532 U.S. 17, 20 (2001) (per curiam)). However, "a person may not claim the Amendment's protections based upon the incrimination that may result from the contents or nature of the thing demanded." *Baltimore City Dep't of Soc. Servs. v. Bouknight*, 493 U.S. 549, 555 (1990).

### A.    Whether Mr. Thandi Must Produce Documents.

Plaintiff argues Mr. Thandi should be compelled to produce pre-existing, voluntarily-prepared documents responsive to requests 1, 2, 25, 26, 29, 30, 39, 40, 41, 42, and 43 as well as GCIB documents responsive to any request of Plaintiff's First Set of Document Requests because neither the contents of these documents, nor their production, is subject to a Fifth Amendment privilege. Mr. Thandi contends that the act of production itself is privileged and he does not have access to GCIB documents.

> In *Fisher v. United States*, 425 U.S. 391, 409-11 (1976), the Supreme Court defined the contours of the Fifth Amendment as it applies to document requests. The Court held that documents voluntarily prepared prior to the issuance of a summons were not compelled testimony, so there was no Fifth Amendment protection for the contents of these records. *Id.* at 410-11. At the same time, however, the Court recognized a narrow privilege against the act of production. Because producing documents "tacitly concedes the existence of the papers demanded and their possession or control by the taxpayer . . . [as well as] the taxpayer's belief that the papers are those described in the subpoena," the Court concluded that the act of production could, in some cases, communicate incriminatory statements and thus may fall under the Fifth Amendment's protection against self-incrimination; but the Court hinted that such a determination would be conditioned on the "facts and circumstances of particular cases." *Id.* at 410-11. Similarly, when a defendant must "make extensive use of the contents of his own mind in identifying the hundreds of documents responsive to the requests in the subpoena," he or she contributes to a "link in the chain" of their prosecution in violation of the Fifth Amendment privilege. *United States v. Hubbell*, 530 U.S. 27, 42-43 (2000) (internal quotation marks and citations omitted).

*United States v. Fridman*, 974 F.3d 163, 174 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 2760 (2021) (emphasis omitted) (alterations in original) (parallel citations omitted). However,

"[t]he act-of-production privilege is not an absolute one[,]" *id.*, and is cabined by two exceptions: the collective entity doctrine and the foregone conclusion doctrine.

### 1. Whether the Collective Entity Doctrine Applies to GCIB Documents.

"Because the Fifth Amendment privilege protects only natural persons, collective entities such as corporations or partnerships may not invoke it to evade document requests." *Id.* at 180 (citations omitted). GCIB, as a corporation, is a collective entity. *In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d 155, 158-59 (2d Cir. 2010); *see also United States v. Shlom*, 420 F.2d 263 (2d Cir. 1969), *cert. denied*, 397 U.S. 1074 (1970) (holding single stockholder corporation is collective entity).

"[A] corporate representative or agent cannot claim a [F]ifth [A]mendment privilege against producing corporate documents, regardless of whether they contain information incriminating him or were written by him, and regardless of whether the corporation is large or small." *In re Two Grand Jury Subpoenae Duces Tecum*, 769 F.2d 52, 56 (2d Cir. 1985) (citations omitted); *see also Fridman*, 974 F.3d at 180 ("Nor may an individual custodian holding a collective entity's records in a representative capacity refuse to produce documents.").

To establish that Mr. Thandi is a custodian of GCIB documents, Plaintiff "need only show a reasonable basis to believe [Mr. Thandi] has the ability to produce records; once the [Plaintiff] has done so, the burden shifts to [Mr. Thandi] to explain or justify refusal." *Fridman*, 974 F.3d at 183 (citing *In re Sealed Case*, 877 F.2d 83, 87 (D.C. Cir. 1989)). Control provides such a reasonable basis, *id.*, and is "not an esoteric concept" but must be considered in "actual, practical" terms. *First Nat'l City Bank of N.Y. v. I.R.S. of U.S. Treasury Dep't*, 271 F.2d 616, 618 (2d Cir. 1959). "[T]here is a presumption that a corporation is in the possession and control of its own books and records" and "[a]ny officer or agent of the corporation" who has the power to access or cause documents to be moved "for any corporate purpose" has control. *Id.*; *see also Greenfield*, 831 F.3d at 119 (finding that ability or authority to receive documents is essential to control); *Control*, Black's Law Dictionary (11th ed. 2019) (defining "control" as "[t]o exercise power or influence over"). Plaintiff has alleged that Mr. Thandi is president, sole owner, and has

signatory authority for GCIB, which is sufficient to establish his control of GCIB documents and, in turn, provides a "reasonable basis to believe [Mr. Thandi] has the ability to produce records[.]" *Fridman*, 974 F.3d at 183.

The burden thus shifts to Mr. Thandi to justify refusal to produce GCIB documents. *Id.* Mr. Thandi represents that he "currently does not have access to the records" because "GCIB ceased doing business in 2020[.]" (Doc. 47-2 at 4.) He further asserts "[u]pon information and belief, GCIB has been out of business since about [August 31, 2020]." (Doc. 55 at 3 n.2.) He does not further claim the records are beyond his control.

While "[i]t is clear that former employees could not serve in a custodial capacity and therefore would hold records only in a personal capacity[,]" Mr. Thandi "has not shown that he is no longer affiliated" with GCIB. *Fridman*, 974 F.3d at 183 (quoting *In re Three Grand Jury Subpoenas Duces Tecum Dated January 29, 1999*, 191 F.3d 173, 181 (2d Cir. 1999)). As Plaintiff notes, "[Mr.] Thandi does not dispute his officer position and ownership." (Doc. 68 at 2.) In addition, Plaintiff has produced evidence that GCIB continues to operate, including records of a pandemic loan issued February 6, 2021 based on GCIB's representation that it had twenty-one employees. In addition, Plaintiff cites an August 9, 2021 letter, on which Plaintiff was copied, from a California attorney at GCIB's business address stating he represents GCIB. Against this backdrop, Mr. Thandi has failed to justify his refusal to produce responsive GCIB documents, and, based on the collective entity doctrine, his response may be compelled.

### 2. Whether the Foregone Conclusion Doctrine Applies to Certain Documents.

When "[t]he existence and location of the papers are a foregone conclusion and the [responding party] adds little or nothing to the sum total of the [requesting party's] information by conceding that he in fact has the papers," compelled production does not run afoul of the Fifth Amendment. *Fridman*, 974 F.3d at 174 (quoting *Fisher*, 425 U.S. at 411). "[F]or the foregone conclusion exception to apply, the [requesting party] must establish 'with reasonable particularity' its knowledge as to '(1) existence of the

documents, (2) the [responding party's] possession or control of the documents and (3) the authenticity of the documents.'" *Id.* (quoting *Greenfield*, 831 F.3d at 115, 119). Under the foregone conclusion doctrine, Plaintiff seeks:

1. All statements concerning the Global Hawk Accounts [Global Hawk's accounts ***0101 and ***2396 at Stifel referred to in paragraph 19 of the Complaint] that you or GCIB received from Stifel.

2. All statements concerning the Global Hawk Accounts that you or GCIB received from Padda or Quantbridge.

…

25. All documents concerning your application for a pledged asset loan account with Stifel in 2016, Stifel SPA loan account ***1745 (referred to in paragraph 20 of the Complaint).

26. All documents concerning Stifel SPA loan account ***1745, including but not limited to increases in the line of credit, amounts borrowed from Stifel, and amounts paid to Stifel.

…

29. All documents concerning your application for a pledged asset loan account with Stifel in 2017, Stifel SPA loan account ***7833 (referred to in paragraph 21 of the Complaint).

30. All documents concerning Stifel SPA loan account ***7833, including but not limited to increases in the line of credit, amounts borrowed from Stifel, amounts paid to Stifel.

…

39. All documents concerning check number 1010 from your account ***3974 at Wells Fargo Bank, including but not limited to the check, images of the check, bank statements showing payment of the check, and deposit slips showing deposit of the check.

40. All documents concerning check number 1011 from your account ***3974 at Wells Fargo Bank, including but not limited to the check, images of the check, bank statements showing payment of the check, and deposit slips showing deposit of the check.

41. All documents concerning deposits made by you or anyone else to Mechanics Bank account ***8399 on or about August 14, 2017.

42. All documents concerning deposits made by you or anyone else to Mechanics Bank account ***8399 on or about November 30, 2017.

43. All documents concerning Global Hawk's Mechanic's Bank account ***8399 for 2017, 2018 and 2019, including but not limited to bank statements and images of checks.

(Doc. 47-3 at 5, 7-9.)

A requesting party need not have "actual knowledge of the existence and location of each and every responsive document." *Fridman*, 974 F.3d at 175 (quoting *Greenfield*, 831 F.3d at 116). Where a party seeks "'customary account documents related to financial accounts that [Plaintiff] knew existed,' the documents' existence is a foregone conclusion." *Id.* (quoting *Greenfield*, 831 F.3d at 118).

Plaintiff has adequately demonstrated knowledge that the relevant accounts exist. (Doc. 1 at 6-12, ¶¶ 18-22, 31-33.) The type of records sought, "bank statements, account opening documents, transaction records, and account closing documents[,] are all quintessential customary account documents." *Fridman*, 974 F.3d at 177. The requests for "all documents concerning" certain accounts and transactions are not overbroad when, as here, there is an account number and date limitations or specific documents requested. *See Greenfield*, 831 F.3d at 113, 119 (upholding request for "all documents in [responding party's] possession" pertaining to account because requesting party had knowledge of account) (internal quotation marks omitted).

To establish that Mr. Thandi has sufficient possession, custody, or control of the requested documents, Plaintiff need only demonstrate knowledge that Mr. Thandi "controls the disposition of assets in an account, [because] it follows that that individual controls the requested documents associated with that account[.]" *Fridman*, 974 F.3d at 175. Plaintiff has proffered evidence that Mr. Thandi had signatory authority for the relevant bank accounts and that Mr. Thandi was able to direct draws on the relevant lines of credit. (Doc. 1 at 6-12, ¶¶ 18-21, 25-26, 32.) In addition, Mr. Thandi's status as President, Treasurer, and a director of Global Hawk and the President and sole owner of GCIB provide further evidence of control over the requested documents.

"There is a critical temporal requirement as well[,]" which is that Plaintiff must show knowledge of the existence and control of the requested documents "at the time the

summons was issued." *Fridman*, 974 F.3d at 175. The court may infer the continued existence and control at the time of the summons by weighing:

> (1) the nature of the documents, (2) the nature of the business to which the documents pertained, (3) the absence of any indication that the documents were transferred to someone else or were destroyed, and (4) the relatively short time period . . . between the date as of which possession was shown and the date of the ensuing . . . summons.

*Id.* at 176 (first alteration in original) (citations omitted).

The first two factors support an inference of continued existence and control because "bank documents are more likely to be retained long term as compared to documents like receipts or prosaic emails" and banks "tend to maintain consumer records." *Id.* at 179 (internal quotation marks omitted). As to the third factor, there is no evidence that the documents were transferred or destroyed. A suggestion of "lost control" is "just that—a suggestion[,]" which "does not amount to evidence of intervening factors[.]" *Id.* While some of the documents predate the summons by five years, they are the types of records that would likely be retained for business or tax purposes. *Id.* (holding inference applied even though some documents pre-dated the summons by eight years because the fourth factor "is not dispositive").

Finally, Plaintiff can "'independently establish[]' authenticity in several ways: 'a) through the testimony of third parties familiar with that type of document, b) by comparison to a prior version of the document, or c) by comparison to other related documents.'" *Fridman*, 974 F.3d at 175 (alteration in original) (quoting *Greenfield*, 831 F.3d at 118). The documents can be authenticated "by comparison with records [Plaintiff] has obtained from the banks and Stifel or with records from [Global Insurance's] files that [Plaintiff] possesses." (Doc. 68 at 4.) Because Plaintiff has established knowledge of existence, Mr. Thandi's control, and authenticity "with reasonable particularity[,]" the foregone conclusion doctrine applies to the documents sought in requests 1, 2, 25, 26, 29, 30, 39, 40, 41, 42, and 43 of Plaintiff's First Set of Document Requests. *Fridman*, 974 F.3d at 174 (internal quotation marks omitted) (quoting *Greenfield*, 831 F.3d at 115, 119).

Plaintiff's motion to compel production of documents is GRANTED and Mr.

Thandi is hereby ORDERED to produce responsive GCIB documents as well as

documents responsive to requests 1, 2, 25, 26, 29, 30, 39, 40, 41, 42, and 43 of Plaintiff's

First Set of Document Requests within thirty (30) days of this Opinion and Order.

## B.    Whether Mr. Thandi Must Respond to Interrogatory Nos. 12 and 13.

Plaintiff also seeks to compel Mr. Thandi's response to Interrogatory Nos. 12 and

13, to which Mr. Thandi objected as follows:

> Interrogatory No. 12. Identify all of your email address(es) and telephone
> numbers (including facsimile numbers) between July 2016 and July 2020.
>
> Answer No. 12. OBJECTION: The Defendant objects to responding to this
> interrogatory on the grounds that it may violate his Fifth Amendment
> privilege, which he asserts in response to this interrogatory.
>
> Interrogatory No. 13. Identify all of GCIB's email address(es) and
> telephone numbers (including facsimile numbers) between July 2016 and
> July 2020.
>
> Answer No. 13. OBJECTION: The Defendant objects to responding to this
> interrogatory on the grounds that it may violate his Fifth Amendment
> privilege, which he asserts in response to this interrogatory.

(Doc. 47-2 at 9.) Plaintiff argues that the "danger of self-incrimination is not readily

apparent from a request for the identification of email addresses and telephone numbers"

and therefore Mr. Thandi does not have a Fifth Amendment privilege. *Id.* at 10.

In order to assert a Fifth Amendment privilege, Mr. Thandi must be "confronted

by substantial and real, and not merely trifling or imaginary, hazards of incrimination."

*United States v. Apfelbaum*, 445 U.S. 115, 128 (1980) (internal quotation marks omitted)

(quoting *Marchetti v. United States*, 390 U.S. 39, 53 (1968)). "The witness is not

exonerated from answering merely because he declares that in so doing he would

incriminate himself—his say-so does not of itself establish the hazard of incrimination. It

is for the court to say whether his silence is justified and to require him to answer if it

clearly appears to the court that he is mistaken." *Hoffman v. United States*, 341 U.S. 479,

486 (1951) (internal quotation marks and citations omitted).

11

If "the danger of self-incrimination 'is not readily apparent from the implications of the questions asked or the circumstances surrounding the inquiry,'" the court "must engage in a 'particularized inquiry as to whether each of [the] claims of privilege could provide evidence that would tend to incriminate him[.]'" *United States v. Stewart*, 907 F.3d 677, 684-85 (2d Cir. 2018) (quoting *Est. of Fisher v. Comm'r of Internal Revenue*, 905 F.2d 645, 649, 651 (2d Cir. 1990)). Here, however, "the hazards of self-incrimination are readily apparent," and Mr. Thandi's "invocation of the privilege against self-incrimination need not be tested by the rote recitation of questions that have obvious answers of which the judge is already aware." *Id.* at 685.

While only civil penalties against Mr. Thandi and GCIB are available in this case for the RICO violation alleged in Claim I, violations of RICO may be criminally prosecuted. *See* 18 U.S.C. §§ 1963 (criminal penalties), 1964 (civil remedies). Plaintiff also brings Claim V for conversion and Claim VII for fraud against Mr. Thandi and GCIB, which likewise have counterparts in the criminal law. *See, e.g.,* 13 V.S.A. § 2501 (grand larceny); 13 V.S.A. §§ 2001-2032 (criminal frauds).

Identifying email addresses, phone numbers, and fax numbers concedes their existence, and suggests their control and use by Mr. Thandi, either in his personal capacity or as an agent of GCIB. *See Bouknight*, 493 U.S. at 555 ("The Fifth Amendment's protection may nonetheless be implicated because the act of complying with the . . . demand testifies to the existence, possession, or authenticity of the things produced."). It is therefore "readily apparent[,]" *Stewart*, 907 F.3d at 685, that the existence and control of means of communication potentially used in a crime could be "a link in the chain of evidence needed to prosecute the claimant," *Greenfield*, 831 F.3d at 114 (internal quotation marks omitted) (quoting *Reiner*, 532 U.S. at 20); *see also United States v. Durand*, 858 F. App'x 452, 454 (2d Cir. 2021) (summary order) (holding, in criminal case, that questions about defendant's phone number, though "relatively innocuous[,]" were "reasonably likely to elicit an incriminating response" because investigators could match his number to those associated with the crime or use the information to get a search warrant for his phone) (quoting *United States v. Avery*, 717

12

F.2d 1020, 1025 (6th Cir. 1983)); *United States v. Mateo*, 392 F. Supp. 3d 454, 468 (D. Vt. 2019) ("[A]sking Defendant to provide her cell phone number in a recorded interview would likely draw a direct connection in Defendant's own words between herself and a key piece of incriminating evidence[, her cell phone]. Solicitation of Defendant's cell phone number was thus useful for investigative purposes but served no other purpose."). Responding to Interrogatory Nos. 12 and 13 therefore presents Mr. Thandi with a "substantial and real, and not merely trifling or imaginary, hazard[] of incrimination." *Apfelbaum*, 445 U.S. at 128 (internal quotation marks omitted) (quoting *Marchetti*, 390 U.S. at 53).

Interrogatory No. 13 asks for GCIB's contact information, not Mr. Thandi's; however, it seeks Mr. Thandi's response. The existence, control, and use of GCIB email addresses, phone numbers, and fax numbers may be incriminating to Mr. Thandi. A corporate agent, in response to interrogatories, is "not barred from asserting his privilege simply because the corporation had no privilege of its own[.]" *United States v. Kordel*, 397 U.S. 1, 7 (1970) (footnote omitted) (collecting cases); *see also United States v. O'Henry's Film Works, Inc.*, 598 F.2d 313, 316 (2d Cir. 1979) ("It is also well settled that an agent of an organization retains a personal privilege against self-incrimination.").

"The collective entity doctrine is limited to documents, not oral testimony. Thus, even if a person is required to produce the records of a collective entity, he 'cannot lawfully be compelled . . . to condemn himself by his own oral testimony.'" *United States v. Fridman*, 337 F. Supp. 3d 259, 266 (S.D.N.Y. 2018), *aff'd*, 974 F.3d 163 (2d Cir. 2020) (emphasis omitted) (alteration in original) (quoting *Braswell v. United States*, 487 U.S. 99, 114 (1988)).

Because the danger of self-incrimination is readily apparent, Plaintiff's request to compel responses to Interrogatory Nos. 12 and 13 is DENIED and Mr. Thandi is deemed to have successfully invoked his Fifth Amendment privilege in order to avoid a response to those discovery requests.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel is GRANTED IN PART and DENIED IN PART (Doc. 47). Mr. Thandi is ORDERED to produce responsive GCIB documents he controls as well as documents responsive to requests 1, 2, 25, 26, 29, 30, 39, 40, 41, 42, and 43 of Plaintiff's First Set of Document Requests within thirty (30) days of this Opinion and Order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 28th day of December, 2021.

Christina Reiss, District Judge
United States District Court

14