# Exhibit G

FILED: 2/8/2022 7:18 AM
Vermont Superior Court
Washington Unit
196-5-20 Wncv

## STATE OF VERMONT

**SUPERIOR COURT**
**WASHINGTON UNIT**

|  |  |
|---|---|
| COMMISSIONER OF THE DEPARTMENT OF FINANCIAL REGULATION<br>      PLAINTIFF,<br><br>v.<br><br>GLOBAL HAWK INSURANCE CO. RISK RETENTION GROUP,<br>      RESPONDENT. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)       **CIVIL DIVISION**<br>      DOCKET NO. 196-5-20 Wncv |

## LIQUIDATOR'S THIRD STATUS REPORT

I, J. David Leslie, Special Deputy Liquidator, hereby submit this Third Status Report regarding the liquidation of Global Hawk Insurance Company Risk Retention Group ("Global Hawk RRG" or the "Company").

1.  On May 15, 2020, the Commissioner of the Department of Financial Regulation ("Commissioner") filed an *ex parte* Petition for Seizure Order pursuant to 8 V.S.A. § 7042(b), seeking, among other things, authorization to take possession and control of Global Hawk RRG. The Court granted the Commissioner's petition by entering the requested order ("Seizure Order") on May 20, 2020. Following entry of the Seizure Order, the Commissioner further investigated the Company's condition, concluded that rehabilitation would be futile, and filed a Petition for Order of Liquidation on June 5, 2020. The Company's founding member – (an entity entitled by the bylaws to exercise more than half the Company's membership votes) – assented to the proposed Order of Liquidation. On June 8, 2020, the Court entered its Order of Liquidation ("Liquidation Order") that, among other things, appointed the Commissioner as Liquidator ("Liquidator"), authorized him to appoint a special deputy liquidator, and approved the Plan of

Liquidation. The Liquidator appointed me to serve as Special Deputy Liquidator on June 9, 2020.

2. The Liquidator filed his First Status Report on November 12, 2020. The report detailed the establishment of a claim filing deadline (December 8, 2021); the cancellation of active policies; the provision of notice to known and potential creditors of the Company; and Global Hawk RRG's current and historical financial condition; as well as the facts and circumstances that caused the Liquidator to file a racketeer and corrupt organization act lawsuit ("RICO Lawsuit") against the Company's former president (Jasbir S. Thandi), managing general agent (Global Century Insurance Brokers, Inc., "GCIB") and financial advisor (Jaspreet S. Padda and QuantBridge Capital, LLC, "QuantBridge").

3. On July 21, 2021, the Liquidator filed his Second Status Report that described, among other things: an update on the number of proofs of claim received; coordination with other public officials with regard to other Global Hawk RRG affiliates; reinsurance; the investigation of claims; and an update on the Liquidator's RICO Lawsuit. The Liquidator has posted the Second Status Report, along with other key liquidation documents, on the website of the Vermont Department of Financial Regulation – www.dfr.vermont.gov/global-hawk. Complaints and selected records in the Liquidator's asset collection actions (see, infra, ¶¶ 14-19) are also posted on the website under the heading "Global Hawk Legal Actions".

STATUS UPDATE

4. Estate Assets. As of December 31, 2021, Global Hawk RRG's assets were as follows:

| | | |
|---|---|---:|
| Cash & Invested Assets | $ | 185,126 |
| Reinsurance Return Premium | | 3,613,725 |
| Total | $ | 3,798,851 |

As noted below (see, infra, ¶ 8), the Liquidator reports reinsurance return premium as an estate asset because it is a sum certain due under a contract. The reinsurance intermediary for this program agrees with the return premium amount. The Liquidator accordingly expects that the $3.6 million total amount will be remitted in three installments: $1,014,358 before February 28, 2022, $1,522,510 before April 1, 2022, and $1,076,857 before July 1, 2022. In contrast, the Liquidator does not report reinsurance receivables because they are too contingent to quantify as an asset in an estate account. Similarly, though the Liquidator believes causes of action against Thandi, GCIB, and others are a significant asset of the Global Hawk RRG estate (see, infra, ¶ 13-18), they remain speculative and uncertain.

5.      Estate Liabilities. As noted in the Commissioner's Petition for Order of Liquidation, Global Hawk RRG projected $23.75 million in ultimate loss and loss adjustment expenses in its 2019 Annual Statement. The Liquidator has very serious reservations regarding the completeness and reliability of this number given that it was produced by GCIB and management and does not reflect any liability for "ghost policies" -- that is, policies that were issued by GCIB (and for which GCIB presumably collected premium) but which GCIB and management did not record in the Company's books and records. See First Status Report ¶¶ 11-13. Unfortunately, there are no better sources of data at this time so $23.75 million should be seen as a "ballpark" estimate of Global Hawk RRG's policy-related liabilities.

6.      Receipt of Proofs of Claim. As of December 31, 2021, the Liquidator had received a total of 624 proofs of claim ("POCs"). One claim has since been withdrawn as duplicative of a previously filed POC. Several of those POCs are "nested" (i.e., a single proof of claim form is submitted with multiple attachments) such that the Liquidator has, to date, assigned a total of 638 claim numbers. Preliminary review indicates that 171 of these claims seek return of unearned premium, 412 seek defense/indemnity payments, 14 seek payment of pre-liquidation

3

loss adjustment expenses, and 41 either do not fall in the preceding categories or contain insufficient information. This analysis suggests that more than 90% of the POCs received are likely to constitute policy-related claims falling in priority class 3. See 8 V.S.A. § 7081.

7.    The Liquidator has attempted to correlate all POCs with Global Hawk RRG policy numbers in order to better understand the Company's potential liabilities. It appears that at least 37 of the POCs received as of December 31, 2021 were submitted in error (e.g. the referenced policy appears to have been issued by another carrier). Further, it appears that approximately 116 of the POCs received relate to "ghost policies".

8.    It is not possible, at present, to use POCs to estimate total Global Hawk RRG liabilities because there is significant overlap and inflation. For example, lenders and policyholders may both submit POCs seeking return of the same unearned premium. Similarly, insureds (seeking indemnity) and third-party claimants (seeking recovery) may both file claims in relation to the same damages. In addition to duplication, POCs provide a poor guide to liabilities because they often reflect the demands made in underlying tort lawsuits without regard to policy limits (e.g. $15 million demanded on a policy with $1 million limits). Given the poor state of Global Hawk RRG's records and the relatively large number of claims received, the Liquidator does not anticipate that reliable estimates of total claim values will be available until fairly late stages of this proceeding.

9.    Claim Filing Deadline. In sending notice of the Liquidation Order to potential creditors, the Liquidator specified a claim filing deadline of December 8, 2021 (the latest allowed by statute) to reflect the fact that, due to the need for significant investigation and asset collection efforts, the Global Hawk RRG liquidation will require considerable time to complete. See 8 V.S.A. § 7061(b) (Claim filing deadline shall be "no later than 18 months following the order of liquidation"). Though the claim filing deadline has run, the Liquidator will continue to

4

accept and investigate proofs of claim filed after the deadline until it begins to interfere with the orderly administration of the estate. See 8 V.S.A. § 7074(c) and (d).

10.    Investigation of Claims. The Liquidator has determined that the interests of members, policyholders, other creditors and the public generally will be best served by focusing efforts and resources on collections efforts with the objective of increasing the assets available for distribution. Accordingly, in most instances investigation of claims has been deferred unless there is a matter of particular urgency or investigation would further asset collection activity (e.g. recovery of reinsurance).

11.    Reinsurance. Global Hawk RRG had two reinsurance programs in place when the Liquidation Order was entered – one, an excess of loss program, with Lloyd's of London and one, a quota share program, with MaidenRe (now FletcherRe). With regard to the Lloyd's program, the Liquidator anticipates receipt of $3.6 million in return premium by mid-2022 (see, supra, ¶ 4) after which point the program will be closed. With regard to MaidenRe/FletcherRe, reinsurance recoveries will be a function of the amount in which reinsured claims are allowed in this proceeding. The Liquidator is therefore working closely with MaidenRe/FletcherRe to investigate potentially reinsured claims. At this point, however, the number and ultimate value of associated reinsurance recoveries is too speculative to quantify.

12.    Provision of Loss Runs. Insurers frequently request that prospective insureds provide loss runs reflecting experience with prior carriers. Accordingly, the Liquidator has received hundreds of requests for loss runs from former policyholders and their insurance agents since the commencement of the liquidation. To alleviate some of the burdens resulting from Global Hawk RRG's insolvency, the Liquidator has endeavored to respond to these requests where possible (records from GCIB are unreliable and there is no record of losses on "ghost policies"). Producing historical loss runs does, however, require significant time and attention

5

and consumes the very limited estate resources. It has now been more than 18 months since the Liquidation Order was entered and more than 15 months since the last Global Hawk RRG policy was cancelled. Former members have therefore had a reasonable opportunity to request loss runs and the expense of continuing to provide this service can no longer be justified. Accordingly, the Liquidator will cease providing loss runs and, with respect to requests received after February 28, 2022, will instead respond with a form letter noting the insolvency, the fact that loss information has not been updated since the Liquidation Order entered in May 2020, and that it is no longer possible to continue providing this service.

13. <u>Premium Finance Loans</u>. It was Global Hawk RRG's practice to require payment of full policy premium at inception. As a result, most policyholders secured loans to finance the upfront cost and would pay those loans off over the course of the policy period. Ordinarily, when a policy is cancelled the insured will receive return premium that will permit them to retire associated premium finance loans. Due to Global Hawk RRG's insolvency, however, return premium could not be distributed and members were left with outstanding loans (the proceeds of which had gone to purchase policies that were now cancelled). The policyholders' dilemma was compounded by the fact that many needed to purchase replacement coverage which, from their perspective, constituted a duplicative cost. Lenders have related concerns regarding borrower non-performance and have begun to pursue collections actions. Many members have contacted the Liquidator regarding such actions and the Liquidator has provided information regarding the Global Hawk RRG liquidation and, where requested, referrals to lending, insurance, and consumer protection agencies in the relevant jurisdictions.

COLLECTION ACTIONS

14. <u>RICO Lawsuit Update</u>. As discussed in the First Status Report, the Liquidator filed a complaint against Thandi, GCIB, Padda, and QuantBridge in the United States District

6

Court for the District of Vermont ("Vermont Federal Court") on October 30, 2020 (Docket No. 2:20-cv-173). Allegations in the complaint include violation of the RICO statute, breach of fiduciary duties, conversion, fraud, and breach of contract. GCIB and QuantBridge have both declined to respond to the Complaint and defaults have been entered against them.

15.     Though his sole proprietorship, QuantBridge, defaulted, Mr. Padda responded to the Complaint in his personal capacity and filed an answer. The Liquidator has since entered into a settlement agreement with Mr. Padda, which was approved by the Court.

16.     Mr. Thandi responded to the Complaint in his personal capacity and the Liquidator understands that his defense is being funded by Allied World Surplus Lines Insurance Company ("Allied World"), pursuant to a Professional Risk-Transfer Organizations Liability Package Policy issued to Global Hawk RRG. (Allied World filed a motion for relief from the Order of Liquidation Injunction to pay Mr. Thandi's defense expenses. That motion was granted by the Court on October 12, 2021.) The Liquidator has served various discovery requests upon Mr. Thandi in both his personal capacity and in his role as the owner of GCIB. Mr. Thandi has broadly invoked the right against self-incrimination under the Fifth Amendment and the Liquidator has disputed the validity of these claims in certain instances. On December 28, 2021 the Federal Court issued an order granting in part and denying in part the Liquidator's motion to compel discovery from Mr. Thandi. Mr. Thandi has failed to produce documents by the deadline set forth in the December 28, 2021 order and the Liquidator is therefore seeking entry of a default against him.

17.     Auditor Lawsuit Filed. During his investigation of Global Hawk RRG's condition following entry of the Liquidation Order, the Liquidator discovered accounting irregularities that should have been uncovered by the former auditors, Crowe LLP ("Crowe"). For example, the Liquidator found discrepancies between the actual investment account

7

statements and capital contributions, and those reported by Global Hawk RRG to Crowe. The Liquidator alleges that these discrepancies would have been discovered if Crowe had instead confirmed the statements and capital contributions with the appropriate parties, e.g., the custodians of the assets. The Liquidator brought these concerns to Crowe's attention and the parties entered into a tolling agreement to facilitate settlement discussions and mediation. Mediation was unsuccessful so on October 26, 2021, the Liquidator filed a lawsuit in Vermont Superior Court against Crowe, alleging breach of the duty of professional care, negligence, negligent misrepresentation, and breach of contract (Docket no. 21-cv-03350).

18.     Crowe removed the action to the United States District Court for the District of Vermont on November 22, 2021 (Docket no. 5:21-cv-273). Crowe has since filed a motion to dismiss and, while the Liquidator does not believe Crowe's positions are meritorious, it is likely that motion practice, discovery, and the reputational issues extending beyond this particular suit will cause this malpractice action to be a complex and protracted matter.

19.     With regard to both the RICO and auditor lawsuits, the Liquidator is unable to provide detailed analysis in this public filing but, if requested, can prepare a confidential report to the Court for filing under seal.

20. <u>Next Steps</u>. The Liquidator will continue to focus on marshalling estate assets and collecting amounts contractually due from the reinsurer while pursuing his actions in the RICO and Crowe litigations. The Liquidator proposes making his next status report in six months.

Subscribed and sworn before me
this 2 day of February, 2022.

_____
Notary Public
My commission expires:  7/10/2026

David F Ross Jr
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
July 10, 2026

_____
J. David Leslie
Special Deputy Liquidator